NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2012-581

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM GAUDET

Argued: January 23, 2014
Opinion Issued: June 20, 2014

Joseph A. Foster, attorney general (Lisa L. Wolford, assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, William Gaudet, appeals his convictions on one count of felonious sexual assault, see RSA 632-A:3, I-III (1996) (amended 2003, 2006, 2008), two counts of misdemeanor sexual assault, see RSA 632-A:4 (Supp. 2005) (amended 2005, 2008, 2010), one count of attempted aggravated felonious sexual assault, see RSA 632-A:2 (2007) (amended 2008, 2012), and one count of attempted incest, see RSA 639:2 (2007) (amended 2008), following a jury trial in Superior Court (Houran, J.). On appeal, he argues that the trial court erroneously: (1) determined that he "opened the door" to certain otherwise inadmissible evidence; (2) denied his

motion for a mistrial during the State's opening statement; (3) denied his two motions for a mistrial during the State's closing argument; and (4) failed to conduct an adequate inquiry after excusing one of the deliberating jurors. We affirm.

I. Factual Summary

The jury could have found the following facts. The victim was born in November 1989. The defendant, the victim's father, is divorced from her mother. In 2001, when she was twelve years old, the victim lived with him in New Hampshire. One day, the defendant came into the victim's room and asked to view a scar on her breast. Although she felt "very uncomfortable" and told him "no," the defendant pulled her shirt down and rubbed her breast for "about ten minutes." The defendant told the victim not to tell anyone, and because she was afraid, she complied. After that incident, the victim moved out of the defendant's home and lived with her mother and stepfather in Maine.

The defendant next assaulted the victim in 2005 when she visited him in New Hampshire for her sixteenth birthday. On the night in question, the defendant gave the victim two beers. While the two watched a movie in the living room, the victim fell asleep. When she awoke, she was lying naked on the defendant's bed. The defendant was lying naked next to her, rubbing his erect penis against her leg, and "rubbing [her] vagina with his hand." The victim felt "really weird[,] . . . uncomfortable[,] [and] . . . scared" and went across the hall to her own bedroom. The next morning, the defendant "said he was sorry" for the previous night. The defendant drove the victim back to Maine. Again, because she was afraid, the victim did not tell her mother about the assault. The victim did not report the assaults to the police until five years later, in 2010.

After speaking to the police, the victim was informed by the defendant's former employer and business partner, Dwight Raymond, that the defendant "had some money." Raymond, who has known the victim since she was a child, was aware that the defendant had inherited a house, which he had sold for $160,000. He was also aware, generally, of the victim's allegations against the defendant, having been informed of them by the police. Raymond advised the victim to file a civil lawsuit against the defendant because he thought that she deserved some of the defendant's money. The victim took Raymond's advice and filed a civil suit against the defendant in Maine. Her lawsuit was still pending when the instant criminal charges were tried.

The relevance of the Maine lawsuit at the defendant's criminal trial was the subject of several colloquies between counsel and the court. Before counsel gave opening statements, defense counsel informed the court that she intended to refer to the Maine lawsuit. The State objected, arguing that the lawsuit was

irrelevant because it seeks "damages based on conduct that occurred strictly within . . . Maine." Defense counsel countered that the victim's affidavit, supporting her lawsuit, also referred to conduct that occurred in New Hampshire. Defense counsel then stated: "I think we can address the existence of the lawsuit without leaving a misimpression that [the New Hampshire] charge[s] [are] the sole basis of the lawsuit." She explained: "I think it can be said that there is a lawsuit in . . . Maine and that part of th[e] [New Hampshire] allegations are included in paperwork in that lawsuit." The trial court decided that defense counsel could refer to the Maine lawsuit in her opening statement, but ruled that if she created "a misleading impression that the New Hampshire charges are the motivation or the only motivation for the Maine lawsuit," then the court would allow the State "to make it clear that the lawsuit does not concern only these charged events here in New Hampshire."

In accord with the trial court's decision, defense counsel made the following statements in her opening statement:

> [P]eople . . . come to Court and [do] not tell the truth for many reasons. . . . [I]n this case, I will suggest two of them to you. Two motivations, motives for [the victim] to lie to you.

> First, as the State has already told you, [she] was never close to [the defendant]. . . . She thought [he] was . . . nicer to her sister and she didn't like it.

> Second, [the defendant] inherited a home and a sum of money just a couple of years before these allegations came to light. And it also seems that [he] wasn't going to share any of that money with [the victim]. And [she] needed, and may still need, that money.

> [The victim] will tell you during this trial that she's had problems with money. That she has needed money and needed it badly. And you will find out these allegations are included as part of a lawsuit she has filed in the State of Maine where she lives.

> With that, I'm going to ask that you pay attention to [the victim]'s testimony and to her two stories, to her memories, and to her motives, to her relationship with [the defendant], and to anything she may have to gain by making these allegations against him.

The State objected, arguing that defense counsel had created "a misimpression that [the New Hampshire allegations are] what the lawsuit is about as opposed to years of sexual and physical abuse, including the specific charged acts in

3

that lawsuit of acts that occurred in Maine."  The State further objected that it was misleading for defense counsel to suggest that the victim's motivation for bringing the lawsuit "is to make money."  The State contended that it had the "right to argue how much weight, if any, evidence [of the victim's motive] should be given," and that it could not "adequately do that [with] the misimpression that this lawsuit was filed . . . last year about these things that occurred eight years ago, without the jury knowing that the abuse had occurred before that, between the two [charged] occasions, and also subsequent to the[ ] charged conduct[,] in multiple states."  Defense counsel countered that her statement that the New Hampshire allegations were part of the Maine lawsuit was true and that, therefore, there was no misimpression for the State to correct.

The trial court ruled that defense counsel's opening statement was misleading to the extent that it suggested that the New Hampshire allegations constituted the sole basis for the Maine lawsuit.  The court stated:  "In . . . balance then, looking at [New Hampshire] Rule [of Evidence] 403, as [the defendant] actively decided to open with reference to the lawsuit, of course the State cannot be limited to simply evidence concerning these charges as in support of that lawsuit."  The court observed that a juror "listening carefully" to defense counsel's opening "would understand there's more to that lawsuit."  Accordingly, the court decided that the State was "not precluded from having the jury understand that there is more to that lawsuit."

With regard to the evidence necessary to counter the misleading impression, the State asserted that the victim "should be allowed to testify what her real motivation is, in that . . . she endured years of physical and emotional and sexual abuse at the hands of this man."  Defense counsel agreed that it would be proper for the victim "to say [that] money isn't [her] motivating factor" and to "say there are . . . other reasons why [she's] suing him in . . . Maine beyond just [the New Hampshire allegations]."  However, defense counsel argued that it would not be proper for the victim to "say [the defendant] physically and sexually abused [her] over all of these years."  Defense counsel stressed that it would be particularly improper for the victim to testify that she was abused in Maine because the Maine allegations had not resulted in criminal charges and because defense counsel had "strong evidence" that the Maine alleged assaults did not occur.

The trial court explained that although the State would be "permitted to rebut any potential[ly] misleading impression" by asking the victim questions about her motive for filing the lawsuit, the State would not be allowed to do so by questioning her about "specific allegations of specific incidents of bad acts such as vaginal penetration in Kennebunk, Maine."  The trial court ruled that with regard to the allegation that the defendant sexually penetrated the victim in Maine, "Rule 403 . . . trump[s] the opening the door doctrine."

4

The State then questioned the victim as follows:

Q . . . Why did you agree to go along with this lawsuit?

A Dwight thought that we deserved some money . . . that [the defendant] got from selling a boat.

Q . . . Did you believe you deserve this money?

A Yes.

Q Why?

A Because everything I went through.

Q And by "everything", what do you mean?

A All the physical abuse and everything I went through from when I was younger.

Q Was that in Maine or New Hampshire or both?

A Maine and New Hampshire.

Q Okay. Are you testifying today in hopes it will help you make money?

A No.

Q Why have you agreed to testify today?

A Because I just want to get this over with.

Q Okay.

A I don't want to keep having it inside.

## II. Analysis

### A. Opening the Door Doctrine

On appeal, the defendant argues that the trial court unsustainably exercised its discretion by finding that his counsel's opening statement "opened the door" to the victim's testimony about his uncharged conduct ("all the physical abuse and everything" the victim endured in "Maine and New

5

Hampshire"). The "opening the door" doctrine comprises two doctrines governing the admissibility of evidence. State v. Wamala, 158 N.H. 583, 589 (2009). The first doctrine, "curative admissibility," applies when inadmissible prejudicial evidence has been erroneously admitted, and the opponent seeks to introduce testimony to counter the prejudice. Id. The second doctrine, "specific contradiction," is more broadly applied to situations in which one party has introduced admissible evidence that creates a misleading advantage and the opponent is then permitted to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. Id. Here, we are concerned only with the specific contradiction doctrine.

For this doctrine to apply, a party must introduce evidence that provides a justification, beyond mere relevance, for the opponent's introduction of evidence that may not otherwise be admissible. Id. at 589-90. However, the initial evidence must have reasonably misled the fact finder in some way. Id. at 590. The rule, thus, prevents a party from successfully excluding evidence favorable to his opponent and then selectively introducing some of this evidence for his own advantage, without allowing the opponent to place the evidence in proper context. Id. The fact that the "door has been opened" does not permit all evidence to pass through because the doctrine is intended to prevent prejudice and is not to be subverted into a rule for the injection of prejudice. Id. "The trial court is in the best position to gauge the prejudicial impact of particular testimony." Id. Accordingly, "we will not upset the trial court's ruling on whether the defendant opened the door to prejudicial rebuttal evidence absent an unsustainable exercise of discretion." Id.

The defendant contends that his counsel's statement that the New Hampshire allegations "are included as part of" the Maine lawsuit was accurate, and, therefore, did not mislead the jury. See id. According to the State, that statement did not create the misleading impression. The State asserts that the misleading impression was created by defense counsel's implied assertions that the victim's motive for bringing the Maine lawsuit was greed ("she has needed money and needed it badly") and that the Maine lawsuit provided a motive for her to fabricate ("pay attention . . . to anything she may have to gain by making these allegations against [the defendant]"). The defendant counters that the victim's "pecuniary motivation was not misleading evidence, but was rather the conclusion the defense hoped the jury would draw from the facts relating to the civil suit." He argues that "[t]he fact that the State disagrees with the inference the defense will urge the jury to draw" from the evidence "does not make that evidence, or the defense's theory, misleading." We believe that whether defense counsel's opening statement created any misleading impression is an arguable point. See State v. Blackstock, 147 N.H. 791, 797 (2002). We also recognize that the trial court carefully considered the parties' competing positions when it concluded that a

6

misleading impression was created.  However, for the purposes of this appeal, we assume, without deciding, that the trial court erred by so concluding.

We next consider whether the trial court's ruling was clearly unreasonable to the prejudice of the defendant's case.  The State asserts that the defendant "effectively waived" any claim of prejudice.  The State contends that the defendant conceded in the trial court that "the State properly could inform the jury that the victim had made 'additional allegations relating to stuff in Maine.'"  However, the State has quoted defense counsel's statement out of context.  At this point in the proceeding, defense counsel was arguing that her opening statement was not misleading.  The trial court had not yet ruled to the contrary.  Based upon our review of the record, we conclude that the defendant did not waive his argument that admitting evidence of the uncharged acts was prejudicial.

The defendant contends that admitting the testimony constituted an unsustainable exercise of discretion because it conveyed to the jury that he had committed other crimes against the victim.  We disagree.  Here, the trial court twice instructed the jury that it could not consider the allegations in the victim's civil lawsuit for their truth.  In other words, the jury was specifically instructed that it could not consider whether the uncharged acts alleged in the victim's civil lawsuit in fact occurred.  Therefore, the trial court's limiting instructions, which the jury is presumed to follow, "minimized the possibility that the jury would misuse the evidence, thus reducing the potential for unfair prejudice."  State v. Costello, 159 N.H. 113, 123 (2009).  Under these circumstances, we hold that the defendant has failed to carry his burden of establishing that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case.  See id.

B.  Motions for Mistrial

The defendant next challenges the trial court's denial of his motions for mistrial.  "We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion."  State v. Bisbee, 165 N.H. 61, 68 (2013) (quotation omitted).

1.  Motion for Mistrial During Opening Statement

We first address the defendant's motion for mistrial based upon the prosecutor's opening statement.  "The standard for reversible error in a prosecutor's opening statement is that the prosecutor must be shown to have acted in bad faith, the opening statement must be completely unsupported by the evidence, and the defendant must be prejudiced thereby."  State v. Dayutis, 127 N.H. 101, 103 (1985).

In her opening statement, the prosecutor stated:

> [The victim] will tell you [that] . . . when she was about 12 years old, she moved back in with . . . her dad . . . because she missed her sister, really.  She will also tell you that not long after moving in with her father, . . . he became verbally and physically abusive to her and her sister.

The defense objected to that statement, and the trial court sustained the objection, although it denied the defense motion for a mistrial.  The court then issued the following curative instruction to the jury:

> All right.  Thank you, jurors, for your patience as I resolved that . . . issue of . . . law.
>
> And the bottom . . . line is as I . . . indicated at the outset, opening statements are not to be argument, among other things. And, accordingly, I sustained the objection that was posed on behalf of [the defendant].
>
> . . . .
>
> [W]hich means that . . . the last statement made by counsel is stricken from the record.  I . . . assume that you understand that, jurors, but I should make it clear.  It's stricken; not to be considered by you in any way.

We assume, without deciding, that the prosecutor's comment was improper.  However, there is no evidence that the prosecutor acted in bad faith. Moreover, any possible prejudice produced by the statement was negated by the court's curative instruction to the jury.  See State v. Hearns, 151 N.H. 226, 233-34 (2004).  Accordingly, we hold that the trial court did not unsustainably exercise its discretion when it denied the defendant's motion for a mistrial based upon the challenged comment by the prosecutor in her opening statement.

### 2.  Motions for Mistrial During Closing Argument

We next address the motions for mistrial based upon the prosecutor's closing argument.  "In examining claims of prosecutorial misconduct during closing argument, we face the delicate task of balancing a prosecutor's broad license to fashion argument with the need to ensure that a defendant's rights are not compromised in the process."  Bisbee, 165 N.H. at 68 (quotation omitted).  "A prosecutor may draw reasonable inferences from the facts proven and has great latitude in closing argument to both summarize and discuss the

8

evidence presented to the jury and to urge them to draw inferences of guilt from the evidence." Id. (quotation and brackets omitted). At the same time, "there must be limits to pleas of pure passion and there must be restraints against blatant appeals to bias and prejudice." Id. (quotation omitted). "Mistrial is the proper remedy only if the evidence or comment complained of is not merely improper, but is so prejudicial that it constitutes an irreparable injustice that cannot be cured by jury instructions." Id. (quotation omitted). "The trial court is in the best position to determine what remedy will adequately correct the prejudice created by a prosecutor's remarks, and absent an unsustainable exercise of discretion, we will not overturn its decision." Hearns, 151 N.H. at 232.

### a. First Motion for Mistrial

During her closing argument, defense counsel told the jury:

> [The victim] testified that she didn't go to the police station [after the November-December 2005 assault], which was next door. She didn't call the police and she didn't call 911. [The victim] then says that the next morning, [the defendant] apologized. So here in court, she said very specifically that at the time he apologized, she knew what he was referring to. Even though, in November of 2010, when specifically asked that question [by the police], she said she didn't know what [the defendant] was talking about. She now says she knows.

> [The defendant] never threatened her, never asked her not to tell, nothing according to her testimony but she doesn't tell her mom when she gets home. She doesn't tell the police. She said she was afraid but she also told you that she . . . was having very little contact with her dad during this period of time. She said that her relationship with him was basically non-existent. That was how she characterized it.

> . . . .

> . . . She didn't tell police, in November [2010] anything about the time when she was 12 and this alleged touching of her left breast, where she says that [the defendant] spent 10 minutes rubbing her left breast when she was 12 years old. She didn't mention that in November either.

> I can't tell you why [the victim] is making these accusations. I can't tell you what relationship there may be between these accusations and Dwight Raymond and this lawsuit but you're not

9

here to figure that out. It isn't your job to sort out what is going on with this case any more than it is my job to explain it.

. . . .

When you consider the evidence that's been presented, what I've said about memory and motives should be forefront in your mind. [The victim's] testimony is not consistent with the way that memories work. [The victim] has motives to lie. . . . [S]he has told you about a lawsuit that these allegations are part of. These allegations are not true. [The defendant] is innocent and the testimony has done absolutely nothing to dispel that presumption.

The State then argued:

You heard the testimony of a brave young woman, [the victim], who told you about a secret that she has carried with her for several years; a secret that she told you about because she no longer wanted to keep it inside; a secret of how her father sexually abused her when she was 12 and when she was 16 years old.

[The victim] told you that when she was 12 years old and she and her father were alone in his house . . . , he came into her bedroom and pulled down her shirt and groped and rubbed her chest -- her breast. He did this when the two of them were alone in the house so no one would know. She told you how uncomfortable that made her feel and that she didn't tell anyone because her father told her not to tell and she was afraid.

. . . .

[After the incident when the victim was sixteen], [o]nce again, she was afraid to tell. She was afraid to tell because she did not know what her father would do because of the physical abuse she suffered --

Defense counsel objected to the statement, "She was afraid to tell because she did not know what her father would do because of the physical abuse she suffered." Defense counsel argued, "At no point did this witness ever[ ] say that she feared physical abuse from [the defendant] if she told. It's . . . not part of the evidence in the case . . . ." Defense counsel moved for a mistrial, contending that the trial court allowed the victim's testimony about physical abuse only to counter the misleading impression about her motive caused by defense counsel's opening statement. Defense counsel argued that

the victim's testimony about why she sued the defendant in Maine "was not
. . . let in for any purpose" other than to counter that misleading impression.

The trial court agreed with defense counsel, stating:

> She did say that she was afraid on the stand but I did not let
> the testimony about the allegations in the lawsuit in for the truth
> of the underlying assertion. I let it in because the door was open
> by the Defense concerning the lawsuit and that lawsuit's
> motivation for her to be fabricating here.

> To take it to the next step takes [it] directly into [Rule] 404(b)
> and I did not let it in for that purpose.

The trial court sustained defense counsel's objection, but denied the motion for
a mistrial. The trial court then issued the following curative instruction:

> [J]urors, as I will discuss in my instructions to you after
> lunch; some evidence is admitted only to assist you in judging the
> credibility of witnesses, not for whether the underlying assertion is
> true or not. Such is the case of the evidence that was just referred
> to by the Prosecutor in her closing argument. Accordingly, I strike
> that portion of the last phrase of her closing argument.

"As a threshold matter, we must determine whether the prosecutor's
remarks amounted to impermissible comments." Hearns, 151 N.H. at 232.
Unlike the trial court, we conclude that the prosecutor's comment was not
improper. "[T]he prosecutor's comments here were a permissible response to
defense counsel's closing argument." State v. Ainsworth, 151 N.H. 691, 698
(2005). In her closing argument, defense counsel specifically referenced the
victim's motive for accusing the defendant of sexual assault: "I can't tell you
why [the victim] is making these accusations." Defense counsel implied that
there was a relationship between the victim's accusations and the Maine
lawsuit: "I can't tell you what relationship there may be between these
accusations and Dwight Raymond and this lawsuit but you're not here to figure
that out." Defense counsel specifically told the jury that the victim "has
motives to lie" and intimated that the Maine lawsuit provided such a motive.
Defense counsel also implied that the victim's failure to promptly report the
charged assaults demonstrated that the assaults never happened: "[S]he didn't
go to the police station, which was next door. She didn't call the police and she
didn't call 911 . . . . [S]he [didn't] tell her mom when she [got] home."

The State's assertion that the victim did not immediately disclose the
charged assaults because she was "afraid" was a permissible evidence-based
response to defense counsel's implied assertions that the victim's allegations

11

against the defendant were untrue and were made to advance her position in her civil lawsuit. The victim specifically testified that she did not disclose the charged assaults when they happened because she was "scared" and "afraid" to do so. To the extent that the State's reference to the "physical abuse" the victim suffered could have been interpreted as a reference to the alleged uncharged assaults in Maine, the trial court's instruction cured any possible prejudice the comments could have caused. Accordingly, we hold that the trial court did not unsustainably exercise its discretion when it denied the defendant's motion for mistrial based upon them.

### b. Second Motion for Mistrial

The defendant again moved for mistrial after the prosecutor stated:

> [The victim] told you that she filed a civil suit in Maine against her father. She told you why she filed the civil suit because of physical abuse. She told you that filing the civil suit against her father was not her idea and that Dwight Raymond suggested that she file the lawsuit. Dwight Raymond's testimony corroborates that fact about what [the victim] told you. . . .
>
> . . . .
>
> If [the victim] filed a civil suit in Maine because of physical abuse, that would not give her a motive to testify about sexual abuse in New Hampshire, however, years of what happened to her as stated in the civil suit of abuse would give her motive. It would give her motive not to tell, not to get her father angry.

Defense counsel objected to the prosecutor's statements and argued that a mistrial was warranted because the State did not merely refer to the physical abuse allegation in the civil suit as a motive for bringing that suit, but also as a motive for the victim's delay in reporting the defendant's sexual assaults. Defense counsel argued that because this was the second time that the State had improperly referred to the physical abuse allegation, a mistrial with prejudice was required. The State explained that "[t]here was no intent on [its] part . . . to do what it was told not to do in this case." The prosecutor stated that she made the error, but not in bad faith, because she mistakenly did not strike all references to the physical abuse allegation from her previously-prepared written closing argument.

The trial court ruled that the State's comment constituted "an improper argument," but that a mistrial, either with or without prejudice, was not required. The court stated:

12

It is not . . . does not, for instance, tr[ea]d into constitutionally impermissible territory, such as a comment on Defendant's failure to testify or comment on a failure of a Defendant to rebut an assertion made by the State or evidence presented by the State.

So, mistrial . . . with or without prejudice is denied. Prosecutor indicates that she was . . . reading from a pre-prepared closing argument and neglected to redact in light of my prior ruling. I accept that representation although I do stress that I thought my prior ruling was clear. It does warrant a clear and unequivocal instruction from me to the jury as to what is and is not proper argument.

And as much as I hate to do it, I think it is necessary that I inform the jury that that portion . . . of [the State's] argument was improper argument and to use that phrase and I believe it is not only warranted but necessary to do so.

The trial court then instructed the jury:

[J]urors, welcome back. In a moment, I'm going to turn the floor back over to [the prosecutor] to complete her closing argument.

First though, I do want to be clear about this. I let in evidence concerning allegations made in a civil lawsuit in Maine for a very limited purpose; the sole purpose, to the extent that you may find it helpful or not, of aiding you in your ability to make determinations about the credibility of the testimony of a witness, specifically, [the victim's] testimony and not for any purpose other than that.

Whether those allegations in a civil lawsuit are true or not true have no bearing on any issue in this case. No direct bearing certainly. And accordingly, it would be impermissible and improper for you to consider whether those allegations are true or not. Likewise, that makes it improper, impermissible for the State to make any argument or even a suggestion to you as to whether the allegations in the civil [suit] are true or not and to the extent that you understood the State to be making references to the allegations in the civil suit and understood those references to make any direct or indirect statement or implication as to the truth of those allegations.

13

That's improper argument and it is stricken from this case. I've told the attorneys that I was going to tell you that and that, accordingly, the last portion that you heard of [the prosecutor's] closing argument concerning the allegations in that civil suit is stricken. In your own minds, you need to consider this case as if those arguments had never been made. They are not proper arguments and are not in this case.

I've told the attorney[s] that that was my ruling. I've also told them that I'm turning the case back over to [the prosecutor] for completion of her closing argument.

And I should say as [the prosecutor] retakes the podium, that I do expect you to follow that instruction as you would follow all other instructions that I give you during the course of this case and in my final instructions after lunch.

Here, even if the prosecutor's comments were improper, the trial court's thorough instruction cured any possible prejudice. Therefore, we cannot say that the trial court unsustainably exercised its discretion when it denied the defendant's second motion for a mistrial.

## C. Investigation of Juror Misconduct

Before the second day of jury deliberations began, Juror No. 10 asked to speak to the court. Outside of the presence of the other jurors, the juror presented the court with the following note, which was entered as an exhibit and given to counsel and the defendant:

I thought I had better [write] this down as . . . I might not be able to correctly convey my thoughts, in the spoken word.

First I think you have an outstanding jury . . . . I am proud to be associated with [it]. We discussed many points and explored many avenues but always someone would ask whether the point was within the parameters and scope of your instructions. I am sure they will work hard and do a good job; I only hope they get it right.

One of the things that puzzled us was why she was the only victim and why the sister didn't testify. I had these things on my mind on the drive home; it couldn't have hit me harder if I drove into a telephone pole. I know why, I know everything, this isn't his first time, this son of a bitch has been doing this all along. Why

14

did he take the older girl?  Because she was ripe, (please excuse that vulgarity but that's the way this guy thinks) the son of a bitch has been raping her too.  What was the other matter the cops were discussing when this came to light?  It was her sister's rape when they asked her if dear old dad was raping her too.  Why didn't the state put the sister on the stand?  Because if they did all this would come out and you would have to declare a mistrial, no jury can hear what I know and remain impartial.  The state is saving her sister as insurance, in case we get it wrong.

. . . .

Your honor I knew this guy was guilty before I came to this revelation, based on the evidence legally presented.  In the logical part of my mind I know these are two different cases but I also know I can no longer be impartial.

Please apologize to the rest of [the] jurors but it can't be helped.

The trial court then had the following exchange with the juror:

THE COURT:  [M]y concern now, I'm telling you . . . , is whether the whole jury can proceed or not, and so I need to back up and ask whether you've shared any of these thoughts --

JUROR NO. 10:  Not a soul.  They didn't even know I was going to leave the room.

THE COURT:  [D]id this come to you overnight, during the overnight break?

JUROR NO. 10:  [Last night] . . . I was asking myself that question.

THE COURT:  [I] just want to be sure that during deliberations, that none of this was on your mind; that you could not have shared any of this information with other jurors.

JUROR NO. 10:  None of that.  I recalled that on my way home.

After this colloquy, the State asked that the juror be dismissed and that one of the alternates serve in his place.  The defendant moved for a mistrial, which the trial court denied.  He does not challenge that denial on appeal.

The court then conducted limited <u>voir</u> <u>dire</u> of the remaining jurors to determine whether to allow the jury to proceed. Specifically, the court asked each juror whether he or she would be able to "set aside . . . deliberations that have occurred to this point" and to base his or her "decision on the evidence from trial and [the court's] instructions of law." All of the jurors answered "yes" to both questions, except for one, who answered "no" to both. This juror was questioned more specifically outside of the presence of the other jurors and then was excused.

The defendant contends that the trial court's <u>voir</u> <u>dire</u> of the remaining jurors was insufficient to determine whether they considered the same improper matters as Juror No. 10 — <u>e.g.</u>, the failure of the victim's sister to testify and speculation as to whether the defendant had sexually assaulted the sister. However, as the State aptly observes, the defendant has not preserved this argument for our review. At no time did defense counsel argue to the trial court that its limited <u>voir</u> <u>dire</u> of the remaining jurors was in any way deficient.

Even if preserved, the defendant's argument is unavailing. "It is axiomatic that a defendant has a right to be tried by a fair and impartial jury." <u>State v. Bathalon</u>, 146 N.H. 485, 487 (2001). "Any juror found to be disqualified before or during trial should be removed." <u>Id.</u>; <u>see</u> RSA 500-A:12, II (2010) ("If it appears that any juror is not indifferent, he shall be set aside on that trial.").

Because the defendant has made no claim of extrinsic contact or communication in this case, we are concerned here only with possible improper intra-jury communication. <u>See</u> <u>State v. Bader</u>, 148 N.H. 265, 279 (2002). "In these circumstances, the burden of proving actual prejudice rests with the defendant." <u>Bathalon</u>, 146 N.H. at 488 (quotation and brackets omitted). "When confronted with an allegation of improper intra-jury conduct, especially where it was alleged that a juror prematurely concluded guilt or innocence and communicated an opinion to other jurors, the trial court should generally remove the offending juror from the panel and undertake individual <u>voir</u> <u>dire</u> . . . ." <u>Id</u>. "The trial court is obviously in the best position to observe the impact of premature jury discussions of guilt and to observe the mood at trial and the predilections of the jury." <u>Id</u>. (quotation, brackets, and ellipsis omitted). This is a fact-specific determination that we review for an unsustainable exercise of discretion. <u>Bader</u>, 148 N.H. at 279.

Here, the trial court not only excused the juror who disclosed his conclusions, but also assured itself, after careful <u>voir</u> <u>dire</u> of the remaining jurors, that no prejudice had affected the panel. <u>See</u> <u>Bathalon</u>, 146 N.H. at 488. Absent proof of actual prejudice, it was within the trial court's discretion to determine the nature and extent of its inquiry into the situation. <u>Bader</u>, 148

N.H. at 279.  Thus, even if the defendant's argument were preserved, we cannot conclude that the nature and scope of the trial court's inquiry into potential intra-juror misconduct constituted an unsustainable exercise of discretion.

<u>Affirmed</u>.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.