NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2014-0592

THE STATE OF NEW HAMPSHIRE

v.

SETH MAZZAGLIA

Argued: November 16, 2016
Opinion Issued: December 13, 2016

Joseph A. Foster, attorney general (Geoffrey W.R. Ward, assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant appeals his first degree murder convictions following a jury trial in Superior Court (Houran, J.). See RSA 630:1-a, I(b)(1) (2016). On appeal, he argues that the trial court erred when it excluded evidence alleging that the victim had expressed to her prior partners an interest in bondage-related sexual activities. We affirm.

The relevant facts follow. A Strafford County grand jury indicted the defendant on seven charges relating to the victim's October 2012 death. The State charged two alternative-theory counts of first degree murder, one alleging

a purpose to kill and the other alleging a knowing murder while committing felonious sexual assault.

The central disputed issue at the defendant's trial concerned the circumstances of the victim's death. The State contended that the defendant, enraged by the victim's refusal to participate in a sexual encounter with him and his girlfriend, attacked the victim from behind while she was watching a movie, strangling her with a rope. The State further asserted that, after the victim had died, the defendant sexually assaulted her.

By contrast, the defense theory was that the victim died during a consensual sexual encounter with the defendant and his girlfriend. According to that theory, the victim allowed the defendant and his girlfriend to put a "harness" around her and then had consensual sexual intercourse with the defendant, while his girlfriend accidently smothered her. The defense theory was based upon the story that the defendant's girlfriend had initially told the defense team in October 2012.

Before trial, the defendant filed a motion to introduce evidence alleging that the victim, then a 19-year-old college student, had previously expressed interest in bondage-related sexual activities. The defense sought to admit evidence alleging that the victim had expressed interest in such activities to her prior sexual partner in May 2010, approximately two and one-half years before her murder. The defense also sought to admit evidence alleging that she had expressed the same interest more recently to her then-current sexual partner.

The defendant argued that, without the evidence alleging that the victim had previously expressed interest in bondage-related sexual activity, "any claims that [the victim] would consent" to bondage-related activities with the defendant and his girlfriend "would seem objectively counterintuitive and implausible." The defendant's pretrial motion also sought to introduce evidence of specific instances of the victim's alleged prior sexual conduct. However, at the trial court hearing on the motion, defense counsel clarified that counsel sought only to introduce evidence of the victim's alleged "openness" to bondage-related sexual activities and would not seek to introduce evidence alleging specific instances of her prior consensual sexual conduct.

The trial court denied the motion, pursuant to New Hampshire Rule of Evidence 412. See N.H. R. Ev. 412. The court explained that, under Rule 412, "inquiry into the prior consensual activities of victims is generally prohibited," but that "[i]n certain instances, . . . protection of the victim and her privacy rights must yield to a defendant's right to due process and to confront accusers." (Quotation and brackets omitted.) "Thus," the court further explained, "a defendant must be given the opportunity to demonstrate that due process requires admission of a victim's prior sexual conduct," by

demonstrating that the evidence "is relevant" and that "its probative value outweighs its prejudicial effect on the victim." (Quotations omitted.)

The court first found that the evidence alleging the victim's prior expressions of interest in bondage-related sexual activities was not relevant to show that the victim consented to engage in such activities with the defendant and his girlfriend. The court also determined that, even if it were to accept the defendant's theory that the evidence had some relevance to show that the victim would consent to engage in bondage-related sexual activities with the defendant and his girlfriend, its probative value was outweighed by prejudice to the victim and her family.

On four occasions during the trial, the defendant argued that the State had opened the door to the evidence alleging that the victim had previously expressed interest in bondage-related sexual activities. On each occasion, the trial court disagreed and precluded the defendant from introducing the challenged evidence. Ultimately, the jury convicted the defendant on both alternative theory first degree murder charges, and he was sentenced on one. This appeal followed.

We first address the defendant's assertion that the trial court erred when it denied his pretrial motion to introduce evidence alleging that the victim had previously expressed interest in bondage-related sexual activities. The defendant argues that the trial court erred by applying Rule 412 to the challenged evidence. Alternatively, the defendant contends that, even if Rule 412 applies to the evidence, the trial court erred by determining that the evidence was irrelevant to a material issue and that, even if relevant, the probative value of the evidence was outweighed by its prejudicial effect on the victim and her family, and that excluding the evidence under Rule 412 violated his due process rights.

We review the trial court's ruling for an unsustainable exercise of discretion, and will reverse only if it was clearly untenable or unreasonable to the prejudice of the defendant's case. State v. Kim, 153 N.H. 322, 327 (2006).

Rule 412 provides, in pertinent part:

(a) Except as constitutionally required, and then only in the manner provided in (b), below, evidence of prior consensual sexual activity between the victim and any person other than the defendant shall not be admitted into evidence in any prosecution or in any pretrial discovery proceeding undertaken in anticipation of a prosecution under the laws of this state.

(b) Upon motion by the defense filed in accordance with the then applicable Rules of Court, the defense shall be given an

3

opportunity to demonstrate, during a hearing in chambers, in the manner provided for in Rule 104:

. . . .

(2) <u>Use of Evidence At Trial</u>: that due process requires the admission of the evidence proffered by the defense which would be otherwise excluded under subsection (a), above, and the probative value in the context of the case in issue outweighs its prejudicial effect on the victim.

<u>N.H. R. Ev.</u> 412. The defendant contends that Rule 412 does not apply to the challenged evidence because the evidence at issue concerns alleged statements of interest, not specific instances of the victim's alleged sexual conduct. For the purposes of this appeal, we assume without deciding that the defendant is correct. Nonetheless, the trial court properly excluded the challenged evidence on the ground that it lacked probative value, or, in other words, was irrelevant to establish that the victim consented to engage in bondage-related sexual activities with the defendant and his girlfriend. See <u>N.H. R. Ev.</u> 401, 402.

To be admissible at trial, evidence must be relevant; that is, it must have a "'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" <u>State v. Higgins</u>, 149 N.H. 290, 297 (2003) (quoting <u>N.H. R. Ev.</u> 401). The defendant argues that the challenged evidence is relevant because it "undermine[s] a significant obstacle to the jury's acceptance" of the defense theory that the victim's sexual encounter with the defendant and his girlfriend was consensual. The defendant asserts that the "significant obstacle" to the jury's acceptance of the defense theory is its presumption that the victim had "ordinary attitudes about sexual practices" and "would have no interest in engaging in [bondage-related sexual] techniques under any circumstances."

The defendant acknowledges that "[i]n jury selection, many prospective jurors agreed that, in the absence of information, they would make no assumptions about whether a person might have an interest in [bondage-related sexual activities]." However, he argues that "by the time of deliberations, the jurors knew a great deal about [the victim's] many admirable qualities," and that, therefore, "there is a significant risk that [they] would presume . . . that she would share the culturally-typical aversion to [bondage-related sexual activities] and . . . would not under any circumstances willingly participate in it." The relevance of the challenged evidence, he contends, "lay in its capacity to neutralize" the presumption that the victim "was a normal person" who would not consent to bondage-related sexual activities.

4

We find <u>Higgins</u>, 149 N.H. at 297, instructive. In that case, the defendant sought to question the victim about "whether she previously had consented to acts of bondage, sadomasochism or sodomy in exchange for drugs or money." <u>Higgins</u>, 149 N.H. at 295. The defendant contended "that this line of inquiry was relevant to his defense theory that the victim consented to being restrained and to engaging in anal intercourse with him because she was previously willing to engage in acts she otherwise found objectionable in order to gain money to support her drug habit." <u>Id</u>. We rejected the defendant's relevance argument:

> To be admissible at trial, evidence must be relevant; that is, it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. We find no merit to the defendant's contention that prior acts of anal intercourse, bondage and sadomasochism in the course of the victim's prostitution would have made it more probable that she allowed him to restrain her with handcuffs, shackles and rope and consented to anal intercourse.
>
> Consent to sexual conduct with one person in no way implies consent to such activity with another. Each decision to consent is a new act, a choice made on the circumstances prevailing in the present, not governed by the past. Whether a woman previously engaged in a particular type of sexual activity, such as anal intercourse or sadomasochistic role-play, with another person has no bearing, in and of itself, on whether she agreed to do so with the defendant.
>
> . . . .
>
> We recognize that circumstances may arise which may make a prostitute's past consensual sexual activity relevant to her bias, prejudice or motive to fabricate. In this case, the defendant argues only that the evidence sought would have been offered to show her propensity to engage in sodomy, bondage and sadomasochism and thus, make it more probable that she would have consented to engage in such conduct with him, a position we reject under the circumstances of this case. Accordingly, we conclude that the defendant failed to establish that his proposed line of inquiry during the deposition process could have led to any relevant information which would have aided the jury in ascertaining any specific fact contested.

<u>Id</u>. at 297-98 (quotations and citations omitted).

Like the defendant in <u>Higgins</u>, the defendant here seeks to introduce the challenged evidence to show that the sexual encounter at issue was consensual. Contrary to the defendant's assertions, the only relevance of the challenged evidence in this case is that it shows the victim's alleged propensity to consent to bondage-related sexual activities. Just as the propensity evidence in <u>Higgins</u> was not relevant to show that the encounter between the victim and defendant in that case was consensual, so too the propensity evidence in this case is not relevant to establish that the encounter between the victim, the defendant, and his girlfriend was consensual. As we explained in <u>Higgins</u>, "[c]onsent to sexual conduct with one person in no way implies consent to such activity with another." <u>Id</u>. at 297. Similarly, the fact that the victim allegedly previously expressed to prior partners an interest in bondage-related sexual activity does not make it more probable that she consented to her encounter with the defendant and his girlfriend. <u>Id</u>. at 297-98.

We next address the defendant's arguments that the trial court erred when it failed to find that the State had opened the door to the previously excluded evidence of the victim's alleged interest in bondage-related sexual activities. The "opening the door" doctrine comprises two doctrines governing the admissibility of evidence. <u>State v. Gaudet</u>, 166 N.H. 390, 396 (2014) (quotation omitted). The first doctrine, "curative admissibility," applies when inadmissible prejudicial evidence has been erroneously admitted, and the opponent seeks to introduce testimony to counter the prejudice. <u>Id</u>. (quotation omitted). The second doctrine, "specific contradiction," is more broadly applied to situations in which one party has introduced admissible evidence that creates a misleading advantage and the opponent is then permitted to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. <u>Id</u>. (quotation omitted). Here, we are concerned only with the specific contradiction doctrine. <u>See id</u>.

For this doctrine to apply, the initial evidence must have reasonably misled the fact finder in some way. <u>Id</u>. The rule, thus, prevents a party from successfully excluding evidence favorable to his opponent and then selectively introducing some of this evidence for his own advantage, without allowing the opponent to place the evidence in proper context. <u>Id</u>. The fact that the "door has been opened" does not permit all evidence to "pass through" because the doctrine is intended to prevent prejudice and is not to be subverted to allow for the injection of prejudice. <u>Id</u>. (quotation omitted). "The trial court is in the best position to gauge the prejudicial impact of particular testimony." <u>Id</u>. (quotation omitted). Accordingly, we will not upset the trial court's ruling on whether the State opened the door to prejudicial rebuttal evidence absent an unsustainable exercise of discretion. <u>Id</u>.

The defendant argues that, on four occasions during the trial, the State, in effect, asserted that the victim "in fact was not the kind of person who would consent to [bondage-related] sexual practices," thus, opening the door to

6

evidence that she had expressed to prior partners an interest in such activities. Based upon our review of the four occasions upon which the defendant relies, we conclude that the trial court did not unsustainably exercise its discretion when it ruled that the State did not, on those occasions, open the door to admission of the evidence at issue.

On the first occasion, the State, during its opening statement, asserted that, according to the defendant, the victim "died during a consensual sexual encounter gone bad" and that, even though she "was in a committed and exclusive relationship," she "consented to dangerous and brutal sex with the [d]efendant, who she barely knew, and with [his girlfriend], who was a work acquaintance." The State further contended that the defense theory was that "[t]he victim agreed to be bound, gagged, strangled, hit, violently sexually exploited by an almost complete stranger, and by a coworker acquaintance who she saw outside of work only once." This theory, the State asserted, was "[a]n insult to [the jury's] commonsense and to [the victim's] memory."

On the second occasion, the State elicited testimony from one of the victim's friends that the victim did not tell him either that "she was sexually attracted to [the defendant's girlfriend]" or that she and the defendant's girlfriend had "talked about sex" and bondage-related sexual activities one night.

On the third occasion, the State elicited testimony from the defendant's girlfriend that she and the defendant had never used the "extreme degree" of bondage involved in the defense theory of the case. Although the State also elicited the girlfriend's testimony that her story to the defense team had been "ridiculous," the trial court struck this response from the record and instructed the jury that the response was not evidence in the case and could not be considered "in any way."

On the last occasion, during its cross-examination of one of the defendant's friends, the State elicited testimony that, he, like the defendant, enjoyed Japanese anime, videogames that involved fantasy and role playing, and, like the victim, he enjoyed the book and the television show, "Game of Thrones." The following colloquy then occurred:

Q You're into all this other stuff like [the defendant] so you must be into [bondage-related sexual activities], right?

A No.

Q It's a fairly simple, logical error isn't it?

A Yes.

Q It's faulty deduction, right?

A Yes.

Q It's faulty deduction that leads to erroneous conclusions, right –

A Yes.

Q -- to misperceptions and misjudgments, right?

A Sure.

The defendant contends that on each of the above occasions, the State created the misimpression that the victim was repelled by bondage-related sexual activities, and, therefore, opened the door to evidence alleging that she was, in fact, interested in such activities. Based upon our review of the record, we conclude that the trial court was not compelled to interpret the evidence as the defendant interprets it. Rather, it was reasonable for the trial court to have found, in each of the instances upon which the defendant relies, that the State did not create the misimpression that the victim was repelled by bondage-related activities. Accordingly, we uphold the trial court's determination that the State did not open the door to the challenged evidence. All issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived. See State v. Blackmer, 149 N.H. 47, 49 (2003).

Affirmed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

8