NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Sullivan
No. 2021-0464

THE STATE OF NEW HAMPSHIRE

v.

JUSTIN M. LAMONTAGNE

Argued: January 25, 2023
Opinion Issued: April 26, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, attorney, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

MACDONALD, C.J. The defendant, Justin M. Lamontagne, appeals his conviction, following a jury trial in Superior Court (Tucker, J.), on four counts of nonconsensual dissemination of private sexual images. See RSA 644:9-a (Supp. 2022). We affirm.

I. Background

The following facts are supported by the record. The defendant and the victim were in a three-year romantic relationship. The relationship ended, but

the defendant and the victim stayed in contact. During the summer of 2019, the defendant learned that the victim was in a relationship with another man. The defendant saw an image on the internet of a naked woman tied in ropes and hanging from a tree (the "bondage image"). The woman's face is blurred and the image contains no information identifying her. The defendant believed the bondage image depicted the victim.

On July 15, 2019, the defendant sent the bondage image to the victim through Facebook Messenger. The victim told the defendant that she was not the person depicted in the image. This interaction led to a discussion of possible sexual activity in which the defendant and the victim could engage, including making a video of them having sex. According to the defendant, he and the victim formed an agreement whereby if the victim did not break up with her new boyfriend or if she did not get help for her depression as the defendant suggested, the defendant could send the video to whomever he wished. The defendant and the victim created the video on July 21, 2019, after this alleged agreement.

According to the State, the sexual encounter and the filming of the video were consensual, but there was no agreement for the video's release. Rather, the State asserted to the trial court that after making the video, the defendant indicated that, amongst other things, the victim must see him once a week and end her relationship with her new boyfriend or the defendant would release the video. The State contended that every time the victim tried to offer an excuse for why she could not see the defendant, he would become angry and threaten to release the video.

On August 4, 2019, the defendant sent a video to four individuals. The State described the video as including "a detailed introduction identifying [the victim] in the video with a clear image of her fully nude body before stopping as she appeared to climb on top of the individual holding the camera." The victim provided the video to law enforcement. The defendant told the police that he did not understand that the victim had rescinded her permission to disseminate the video, so he sent it. The defendant was charged with four counts of nonconsensual dissemination of private sexual images in violation of RSA 644:9-a, II, and one count of attempted sexual assault based on his alleged threat to release the video in violation of RSA 632-A:2, I(d) (2016).

In April 2021, the defendant, through counsel, filed a "Motion in Limine #1 to Introduce Evidence of Prior Sexual Activity." (Capitalization and bolding omitted.) The defendant argued that "[t]he evidence related to purported bondage activity is relevant" because his "discovery of this image was part of what prompted the discussion of making a video." He also argued that this evidence was relevant because "the discovery of the image would impact [his] knowledge of whether or not [the victim] would enter into an agreement which would potentially expose a video of her body." He contended that, "[q]uite

2

simply, if [he] believed that [the victim] had previously exposed her body on the internet, it would impact the reasonableness of his belief that [the victim] would enter into an agreement whereby he could share images upon a breach of the 'agreement.'" The defendant specified that he was "not seeking to introduce the image in his case in chief, merely the fact that he believed he had seen such an image posted on social media."

The State filed an objection to the defendant's motion, asserting that "[t]he evidence the defendant seeks to introduce is wholly irrelevant to the matters on trial" because "the fact that the defendant believed [the victim] consented to post bondage photos online does not imply she consented to him posting a sexual video of her online," "[n]or does it suggest the defendant was reasonably able to infer consent based upon his subjective belief."

In June 2021, the trial court held a hearing on the pending motions, including the defendant's motion in limine. Defense counsel argued that testimony about the defendant's belief that the bondage image depicted the victim was relevant to the concern that the State would "create this misimpression that Mr. Lamontagne, out of the blue, coerced [the victim] into making a video." Defense counsel further argued that the testimony was relevant to the defendant's mental state, in that "[i]f someone has an Instagram, for example, where they post a lot of pictures of themselves naked, if someone's a porn star or something of that nature, it just does impact your analysis of what their thinking would be on their comfort level of posting pictures of themselves on the internet."

The State argued that the defendant was "raising a very similar propensity relevance argument that because he believed [the victim] was consensually in bondage photos online, it was reasonable for him to assume that she agreed to his disseminating an illicit video online." The State further contended that the testimony was irrelevant because "[t]here's no information that the photo was shared consensually" and "whether or not [the defendant] subjective[ly] believe[d] that it was consensually shared is irrelevant." Rather, the issue is "whether or not [the defendant] had consent to disseminate an entirely different video." Moreover, the State specified that the victim consented to making the video, making the relevant question at trial "whether or not there was an agreement to release the video."

In July 2021, the trial court denied the defendant's motion in limine. The trial court determined that because, according to the State, the victim agreed that the sexual encounter with the defendant and its filming were consensual, "whether the bondage video prompted them to make their own video is not relevant." In response to the defendant's argument regarding the reasonableness of his belief that the victim would enter into a conditional-dissemination agreement with him, the trial court explained that "[i]t appears, however, that the issue at trial will not be over the terms of the agreement and

3

whether it included [the victim's] authorization to release the video if she did not meet certain conditions, but rather whether there was an agreement at all." The trial court further noted that "[t]he State represents [the victim] will testify the defendant used the video of them to blackmail her by threatening to publish it if she did not continue to see him, and doing so when she refused." Therefore, the trial court concluded that "[e]vidence of the bondage [image] is not relevant under the circumstances as the parties describe them" and "[r]eferences to it, therefore, are excluded." The trial court specified that "[t]he ruling is preliminary, with leave to a party to request reconsideration if circumstances at trial warrant."

The trial court conducted a three-day jury trial in August 2021. At trial, the defense introduced evidence about the pre-video Facebook messages exchanged between the defendant and the victim. The testimony regarding the bondage image did not arise at trial, nor did either party request reconsideration of the preliminary ruling. The jury returned guilty verdicts on four charges of nonconsensual dissemination of private sexual images and found the defendant not guilty of attempted aggravated felonious assault. This appeal followed.

On appeal, the defendant argues that the trial court erred in excluding his proffered testimony that he believed the bondage image depicted the victim. The State contends that the trial court sustainably exercised its discretion in excluding this testimony because the image "was irrelevant to whether the victim consented to the defendant's dissemination of the charged video."

II. Analysis

"The decision to admit or exclude evidence is within the discretion of the trial court." State v. Brown, 175 N.H. 64, 66 (2022). "In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made." Id. "To show an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id. "Because we are reviewing the trial court's pretrial rulings, we limit our review to the proffers presented to the court at the pretrial motion hearing." Id.

RSA 644:9-a, II provides that a person commits nonconsensual dissemination of private sexual images when he or she:

(a) Purposely, and with the intent to harass, intimidate, threaten, or coerce the depicted person, disseminates an image of such person:
 (1) Who is identifiable from the image itself or information displayed in connection with the image; and
 (2) Who is engaged in a sexual act or whose intimate parts are

4

exposed, in whole or in part; and
(b) Obtains the image under circumstances in which a reasonable person would know or understand that the person in the image intended that the image was to remain private; and
(c) Knows or should have known that the person in the image has not consented to the dissemination.

Under Rule 401, evidence is relevant if it "has any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." N.H. R. Ev. 401. On appeal, the defendant asserts that the testimony about the bondage image was relevant because his "beliefs about the bondage image encouraged and supported him in thinking that [the victim], more than most people, was disposed to consent to the public disclosure of sexualized images of her naked body." The defendant explains that his "belief therefore made more plausible his claim that, later, she consented to his dissemination of the excerpt of the sex tape." We disagree.

The defendant characterized this evidence to the trial court as relevant to the defendant's "mental state," not the victim's propensity to consent to the dissemination of images of her naked body. However, the defendant's "mental state" argument encompasses the same propensity rationale that he purports is not in play. Our case law expressly rejects such reasoning in determining whether an individual's past engagement in a sexual activity is relevant to proving that the individual consented to the sexual activity at issue.

In State v. Mazzaglia, the defendant was charged with two alternative-theory counts of first degree murder. State v. Mazzaglia, 169 N.H. 489, 490 (2016). On appeal, Mazzaglia argued that "the trial court erred when it excluded evidence alleging that the victim had expressed to her prior partners an interest in bondage-related sexual activities." Id. Specifically, he argued that this evidence was relevant because it "undermine[d] a significant obstacle to the jury's acceptance of the defense theory that the victim's sexual encounter with the defendant and his girlfriend was consensual." Id. at 493 (quotation omitted). Mazzaglia contended that "the significant obstacle to the jury's acceptance of the defense theory is its presumption that the victim had ordinary attitudes about sexual practices and would have no interest in engaging in bondage-related sexual techniques under any circumstances." Id. (quotations and brackets omitted).

We found our reasoning in State v. Higgins instructive:

"Consent to sexual conduct with one person in no way implies consent to such activity with another. Each decision to consent is a new act, a choice made on the circumstances prevailing in the present, not governed by the past. Whether a woman previously engaged in a particular type of sexual activity, such as anal intercourse or

5

sadomasochistic role-play, with another person has no bearing, in and of itself, on whether she agreed to do so with the defendant."

Id. at 493, 494 (quoting State v. Higgins, 149 N.H. 290, 297-98 (2003)). Relying on this reasoning, we concluded that "the fact that the victim allegedly previously expressed to prior partners an interest in bondage-related sexual activity does not make it more probable that she consented to her encounter with the defendant and his girlfriend." Id. at 494. Therefore, we determined that "the trial court properly excluded the challenged evidence on the ground that it lacked probative value, or, in other words, was irrelevant to establish that the victim consented to engage in bondage-related sexual activities with the defendant and his girlfriend." Id. at 492-93.

Here, in the pretrial motion hearing, defense counsel attempted to counter this propensity analysis by distinguishing between a case involving sexual assault and a case involving dissemination of an image. See RSA 644:9-a, II(c). We fail to see such a distinction. We hold that our determination that "[c]onsent to sexual conduct with one person in no way implies consent to such activity with another" also applies in the context of the dissemination of private sexual images under RSA 644:9-a. See Mazzaglia, 169 N.H. at 494. Under these circumstances, testimony about the defendant's subjective belief that the bondage image depicted the victim does not have a tendency to make it more or less probable that the victim later consented to the dissemination of the video. See N.H. R. Ev. 401.

The defendant argued to the trial court that RSA 644:9-a, II involves a subjective belief of whether the person consented, not an objective standard. In other words, the defendant argued that the inquiry is not whether the victim actually consented to the dissemination of the video, but whether the defendant believed, subjectively, that she consented. However, the defendant misconstrues RSA 644:9-a, II. The statute does not address whether the person would consent or be likely to consent to the dissemination of a private sexual image, but rather whether the defendant "[k]nows or should have known" that the person has not consented. RSA 644:9-a, II(c).

In his motion in limine to introduce testimony about the bondage image, the defendant asserted that the victim had the idea to make the video together and agreed that if she did not end her relationship with her boyfriend or receive mental health treatment, the defendant "would be allowed to send the video to whomever he wants." (Quotation omitted.) He noted that he told the police "he never once thought that the permission to send the video was rescinded." (Quotation omitted.) Thus, the defendant argued to the trial court that the victim affirmatively granted him permission to disseminate the video. Whether the victim would have been likely to do so prior to that alleged consent is irrelevant to whether she actually consented under these circumstances. See Mazzaglia, 169 N.H. at 494 (reasoning that "the fact that the victim allegedly

6

previously expressed to prior partners an interest in bondage-related sexual activity does not make it more probable that she consented to her encounter with the defendant and his girlfriend").

The defendant further argues that the trial court erred because, "[r]elying exclusively on a finding that the proffered evidence was irrelevant, the court did not cite Rule 403 nor weigh any probative value of the evidence against any concern about its risk of unfair prejudice."  Rule 403 provides that "[t]he court may exclude <u>relevant evidence</u> if its probative value is substantially outweighed by a danger of one or more of the" outlined factors.  <u>N.H. R. Ev.</u> 403 (emphasis added).  Rule 402 expressly states that "[i]rrelevant evidence is not admissible." <u>N.H. R. Ev.</u> 402.  Therefore, the trial court was not required to engage in a Rule 403 analysis because it concluded that the evidence was irrelevant and, therefore, inadmissible.

We note that the trial court did not rely on the above reasoning in its order denying the defendant's motion <u>in limine</u>.  However, applying our <u>Mazzaglia</u> consent analysis to the dissemination of private sexual images under RSA 644:9-a, the trial court could only have concluded, as a matter of law, that the proffered testimony about the bondage image was irrelevant and, therefore, inadmissible.

<u>Affirmed</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

7