NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2022-0557

STATE OF NEW HAMPSHIRE

v.

NESTOR ROMAN

Argued: September 21, 2023
Opinion Issued: December 28, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Robert L. Baldridge, attorney, on the brief and orally), for the State.

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Donna J. Brown on the brief and orally), for the defendant.

DONOVAN, J. The defendant, Nestor Roman, appeals his convictions, following a jury trial, on one count of aggravated felonious sexual assault (AFSA) for engaging in a pattern of sexual assault, two counts of attempted AFSA, and two counts of misdemeanor sexual assault. See RSA 632-A:2, III (Supp. 2022); RSA 629:1 (2016); RSA 632-A:2, I(j) (Supp. 2022); RSA 632-A:4 (Supp. 2022). The defendant argues that the Superior Court (Delker, J.) erred by ruling that the defense opened the door for the State to introduce the testimony of a nurse who performed a Child Advocacy and Protection Program

(CAPP) examination of the victim. We conclude that the defendant opened the door to this evidence and that the State was entitled to explain the nurse's findings. Accordingly, we affirm.

## I. Facts

The jury could have found, or the record otherwise supports, the following facts. On June 25, 2019, the victim was playing video games in her bedroom when the defendant, her grandfather, entered the victim's room and began touching her breast and her inner thigh over her clothing. The victim testified that when she pushed the defendant away, he told her that he was sorry. The victim then called her mother, the defendant's daughter, to tell her that the defendant had sexually assaulted her. The victim and her mother then went to the police station to file a report. While they were there, the defendant arrived to turn himself in, telling the police that "he did something wrong."

During a subsequent Child Advocacy Center (CAC) interview, the victim disclosed another incident of abuse that allegedly occurred in November 2018. Thereafter, the State indicted the defendant on two counts of attempted AFSA. In 2021, shortly before the defendant's trial was scheduled to begin, the victim told her mother that the defendant's sexual abuse was not limited to the 2018 and 2019 incidents. She disclosed that the abuse began much earlier, when she was in elementary school. As a result of these new allegations, the defendant's trial was continued. The victim participated in another CAC interview and underwent the CAPP examination at issue in this appeal in September 2021. The State subsequently indicted the defendant on additional AFSA charges.

In June 2022, twelve days before the rescheduled trial date, the State filed an amended witness list that included for the first time the nurse who performed the victim's CAPP examination. The defendant moved to exclude the nurse's testimony because her addition to the witness list was untimely. The State responded by filing a motion in limine to permit the nurse to testify about the victim's statements during the CAPP examination. The trial court granted the defendant's motion to exclude the nurse's testimony based on the State's untimely disclosure.

At trial, the State called the lead detective assigned to the victim's case. The detective testified, in pertinent part, that he collected medical records during the investigation, explaining that police request a CAPP examination whenever a child discloses "some sort of sexual trauma or experience." Although he testified that he received medical records from the victim's CAPP examination, he did not discuss the results or findings of the examination which were documented in those records. Nonetheless, on cross-examination,

2

defense counsel questioned the detective about the nurse's findings from the CAPP examination. Specifically, defense counsel asked whether the detective's review of the records indicated "anything significant" such as "tears" or "injuries" or other "signs of trauma." The detective testified that there were no injuries documented. The State then approached the trial court and argued that, by questioning the detective about the specific findings of the CAPP examination, the defense had opened the door for the nurse to explain her findings. The defense maintained that it was forced to inquire into the nurse's findings after the detective testified that he received medical records because "everybody assumes when there's medical records that something happened. That there's something bad; that there[] [are] injuries."

The trial court ruled that, by introducing the detective's testimony that there had been a CAPP examination, the State did not open the door to any otherwise inadmissible evidence. The court further concluded that the defense introduced hearsay by questioning the detective about the nurse's specific findings and, therefore, that the defense opened the door to the nurse's testimony regarding the likelihood of specific types of injuries observed when a child is sexually abused. The defendant deposed the nurse the following morning before trial resumed. The State subsequently called the nurse to testify as an expert in pediatric nursing, specifically in the area of child abuse and maltreatment. The nurse testified that, in the majority of examinations she had performed, physical signs of abuse were not present.

The jury convicted the defendant on one count of AFSA for engaging in a pattern of sexual assault, two counts of attempted AFSA, and two counts of misdemeanor sexual assault. This appeal followed.

## II. Analysis

On appeal, the parties both acknowledge that the door was opened to evidence that would not have otherwise been admitted at trial. However, they dispute which party opened the door and to what evidence the door was opened. We review a trial court's decision regarding the admissibility of evidence under the opening the door doctrine pursuant to the unsustainable exercise of discretion standard. State v. Barr, 172 N.H. 681, 692 (2019). To prevail, the defendant must show that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. Id. If the record establishes that a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it, we will uphold the trial court's decision. Id.

The opening the door doctrine comprises two doctrines governing the admissibility of evidence. State v. Gaudet, 166 N.H. 390, 396 (2014). The first, which we have described as the doctrine of "curative admissibility," arises

3

when inadmissible prejudicial evidence has been erroneously admitted by one party, and the opposing party seeks to introduce other evidence to counter the prejudice. State v. DePaula, 170 N.H. 139, 146 (2017). The second, which we have described as the doctrine of "specific contradiction," applies more broadly to situations in which a party introduces admissible evidence that creates a misleading advantage for that party, and the opposing party is then permitted to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage. Id. With respect to either doctrine, the fact that the "door has been opened" does not permit all evidence to "pass through" because the doctrine is intended to prevent prejudice and is not to be subverted into a vehicle for the introduction of prejudice. See State v. Benoit, 126 N.H. 6, 21 (1985).

To prevent confusion that might arise from the use of the term, when a party uses the term "opening the door" or its equivalent as justifying the admission of otherwise inadmissible evidence, the party should specify which of the two doctrines is being invoked. Barr, 172 N.H. at 693. This specificity is necessary because the two doctrines are invoked by different types of evidence — curative admissibility is triggered by the erroneous prior admission of inadmissible evidence, while specific contradiction is triggered by the introduction of misleading admissible evidence. Id. at 693-94. Under the curative admissibility doctrine, a trial judge has discretion to admit otherwise inadmissible evidence to rebut prejudicial evidence that has already been erroneously admitted. Id. at 693. Under the specific contradiction doctrine, a trial judge has discretion to admit previously suppressed or otherwise inadmissible evidence to directly counter the misleading advantage triggered by the introduction of admissible evidence. Id. at 693-94.

Turning to the case before us, we first address the issue of which party opened the door. On appeal, the defendant argues that the State opened the door to the detective's testimony on cross-examination regarding the contents of the CAPP records under either the curative admissibility or specific contradiction doctrine. Specifically, he argues that the State opened the door when it questioned the detective regarding the medical records he received during the investigation. We disagree.

On direct examination, the State asked the detective whether he collected any evidence in the case other than interviews with the victim and her mother, to which he responded that he did not. The State then specifically asked the detective whether he "collect[ed] any medical records." The detective then responded:

Oh, yes. And there [were] medical records. So when — when a child indicates that there is some sort of sexual trauma or experience, we refer — there's something called a CAPP, C-A-P-P exam. It's a Child Advocacy

4

Protection Program. It's handled through Dartmouth-Hitchcock. And we say, you know, regardless of what else it is you're going to want to do, this is a doctor that specializes in this sort of exam[]. They know how to talk to kids, and they know — they — they can sexually — it's not the same as like a — like a rape kit that you'd get at like a — like the emergency room, but they go through and they — they do like an exam of the child. And I received medical records from that exam.

The defendant argued to the trial court that this response opened the door because it created a prejudicial and misleading impression that the detective relied upon medical records as support for the defendant's arrest. He therefore asserted that he was permitted to counter the "prejudice and misleading impression left with the jury" by cross-examining the detective about the CAPP examination findings.

The trial court disagreed. In explaining its decision, the court explicitly addressed the curative admissibility doctrine, stating that the State did not "inject otherwise inadmissible evidence" because "the investigative steps the police take in a case [are] relevant evidence for the jury to evaluate whether the police considered all and pursued all possible investigative avenues."

We first address the defendant's argument that the State opened the door under the specific contradiction doctrine. He asserts that the State's line of questioning about the investigation could have misled the jury to infer that the medical records obtained in the course of the investigation contained information that led to his arrest. The defendant also argues that this line of questioning created a misleading advantage because it referred to excluded evidence, and we have previously held that, in certain circumstances, a witness's reference to inadmissible evidence can constitute reversible error. See State v. Ober, 126 N.H. 471, 471-72 (1985).[1] Therefore, according to the defendant, the State's reference to such medical records was "for its own advantage" because it forced the defendant to either address this evidence —

---

[1] The defendant argues that State v. Ober, 126 N.H. 471 (1985), is analogous to the case at hand "for the notion that mere reference to previously excluded or inadmissible evidence, as well as inferences that may be drawn therefrom, is prejudicial, creates a misleading advantage, and, in some cases . . . constitutes reversible error." We disagree with the defendant that Ober is analogous to the case at hand. In Ober, we held that the State's questioning of a witness during trial regarding whether the victim had been asked to take a polygraph test constituted reversible error. Ober, 126 N.H. at 472. Given that we had previously held that the results of a polygraph test are not admissible as evidence of guilt or innocence in a criminal trial, we explained that a "question asking whether a victim has been asked to take a polygraph test cannot produce admissible evidence." Id. at 471-72. Here, the court did not rule that the contents of the CAPP examination records were inadmissible. Although the nurse was not allowed to testify due to the State's untimely disclosure, the court's order did not preclude any testimony regarding the existence of the CAPP examination records. We thus are unpersuaded that Ober is sufficiently similar so as to be instructive here.

and risk opening the door to the nurse's testimony — or "leave the jury with the misleading impression." At oral argument, however, the defendant noted that testimony explaining that the victim was referred to Dartmouth-Hitchcock for a medical examination would not have been prejudicial because the jury would not have speculated about the findings of that examination. Although we have previously held that the door can be opened by inferential conclusions that may be drawn from a witness's testimony, we are unpersuaded that the detective's responses to the State's questions created such a "misleading advantage." See DePaula, 170 N.H. at 146.

We agree with the trial court that "the investigative steps the police take in a case [are] relevant evidence for the jury to evaluate." Although the defendant argues that the jury could have speculated about the detective's consideration of the medical records during his investigation leading to the defendant's arrest, the trial court instructed the jury "to decide the case based only on the evidence that's properly admitted during the course of the trial." See Gaudet, 166 N.H. at 397 ("[T]he trial court's limiting instructions, which the jury is presumed to follow, minimized the possibility that the jury would misuse the evidence, thus reducing the potential for unfair prejudice." (quotation omitted)). Speculation that the contents of the medical records supported the defendant's arrest would have required the jury to disregard the judge's instruction. We conclude that the State's introduction of the fact that a CAPP examination of the victim had occurred and that medical records were generated as a result of that examination, as described by the detective, without more detail, did not give rise to a "misleading advantage" that required rebuttal. See DePaula, 170 N.H. at 146.

We next address the defendant's argument that the State opened the door when it referred to evidence that was excluded by the pretrial order. He asserts that the trial court "predicted the very position the defense would ultimately be forced into" when the court reasoned in its pretrial order that "the defendant made a credible argument that if the alleged victim's statements are admitted, defense counsel would be forced to decide whether to explore medical observations of the . . . nurse on cross-examination." However, we disagree with the defendant's characterization of the pretrial order as "intended to [expressly] exclude . . . *any* discussion of the medical records" during the trial.

In granting the defendant's motion to exclude the nurse as a witness, the trial court based its decision solely on the State's untimely disclosure. The trial court did not expressly or implicitly rule that the victim's statements were inadmissible. Nor did it prohibit the parties from introducing any evidence that medical records were generated during the CAPP examination or that any such examination occurred.

On direct examination, the detective acknowledged that a CAPP examination of the victim had been conducted and that records documenting the findings of that examination existed, but he made no mention of the victim's statements or the nurse's specific findings. The defendant misconstrues the trial court's order by arguing that the detective's acknowledgement that medical records exist in this case opened the door to the nurse's testimony. Rather than excluding all discussion of medical records, the trial court prohibited the State only from calling the nurse as a fact witness to testify about statements made by the victim during the examination. The trial court's ruling did not prohibit the detective from disclosing that he collected medical records, from explaining the purpose of a CAPP examination, or from testifying that the victim underwent a CAPP examination. Therefore, because an erroneous admission of evidence is required to invoke curative admissibility, the State cannot have opened the door under the curative admissibility doctrine. See Barr, 172 N.H. at 692. We are unpersuaded by the defendant's remaining arguments that the State's questioning of the detective regarding the medical records opened the door to the information elicited during the cross-examination.

Accordingly, we conclude that, under either opening the door doctrine, the defendant has failed to show that the trial court unsustainably exercised its discretion by determining that the State did not open the door. The trial court reasonably found that the State did not open the door to cross-examination regarding the specific contents of the medical records by introducing testimony acknowledging the existence of such records.

We next turn to the issue of whether the defense opened the door. In its pretrial order, the trial court warned that if the nurse were permitted to testify about the victim's statements made during the CAPP examination, and if the defense then cross-examined the nurse on her medical observations during the exam, then the defense "may, in turn, open the door to otherwise inadmissible expert testimony relating to the . . . nurse's medical observations and the reasons she did not observe signs of trauma." Nonetheless, during its cross-examination of the detective, the defense specifically inquired about the significance of the nurse's observations documented in the medical records, which prompted the State to argue that the defense opened the door for the State to call the nurse, as an expert, to explain her findings.

The trial court concluded that this line of inquiry opened the door to the nurse's testimony. It stated that "once the Defense injected issues of specific expert testimony relating to when and what the likelihood of hymenal tears are, . . . that is what makes that line of cross-examination prejudicial, and . . . [the nurse's] testimony is essential to rebut that prejudice." The trial court observed that the defense could have cross-examined the detective "in a far more narrow fashion that would not have opened the door to the details of the

examination." The trial court determined that, because the State did not object during the defense's cross-examination and prejudicial evidence was therefore admitted, the defense opened the door under the curative admissibility doctrine.

We agree that the curative admissibility doctrine applies here because that doctrine is premised on the erroneous admission of evidence. See id. The defendant does not challenge the trial court's finding that defense counsel's questioning of the detective about the nurse's findings was inadmissible. Had the defense been permitted to introduce the nurse's CAPP examination findings without allowing the State to call the nurse to explain her observations, the jury would have been left to rely solely upon the detective's testimony about the nurse's findings.

The defendant argues that, because the State failed to object to the defense's questioning of the detective on cross-examination, the State should not have been entitled to benefit from its previous introduction of "misleading" testimony. Rather, in his brief, the defendant argues, in passing, that at most the State was entitled to a limiting instruction. The record establishes, however, that the defendant failed to present this argument to the trial court. Instead, defense counsel maintained that her cross-examination of the detective was "a proper response" to the State's "thorough investigation argument." Because the defendant never argued for this alternative measure before the trial court, the argument is not preserved for our review, and we decline to address it. See State v. Mercon, 174 N.H. 261, 268 (2021) (explaining our long-standing rule that parties may not have judicial review of matters not raised in the forum of trial).

Moreover, our review of the trial proceedings reveals no indication that the State's failure to object to the detective's cross-examination was an intentional or tactical decision. Further, for the reasons already discussed, the detective's testimony in response to the State's questioning was not misleading. Merely reviewing the State's investigative steps with the detective cannot be a basis for introducing prejudicial evidence concerning the victim's medical records. Therefore, we are unpersuaded by the defendant's argument that the State sought to benefit from "its previous introduction of misleading testimony."

The defendant next argues that, even if the defense opened the door, the trial court should have allowed the State to further question the detective about the CAPP examination results rather than calling the nurse to testify. However, this argument ignores the fact that the detective was not qualified as an expert to opine on the significance of the examination's results. Expert testimony is required if any inference of the requisite causal link must depend on observation and analysis outside the common experience of jurors.

8

Stachulski v. Apple New England, LLC, 171 N.H. 158, 168 (2018). Here, the nurse was the only expert witness who testified at trial. The defendant also argues that the detective's prior testimony countered any potential prejudice caused by the defendant's questioning of the detective. However, for the reasons already discussed — namely, that the detective was not qualified to give his opinion regarding the significance of the examination's results — this argument is unavailing.

We conclude that the nurse's testimony was essential to rebut the prejudice caused by the defense's cross-examination of the detective. The trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice. DePaula, 170 N.H. at 151. Here, the evidence introduced by the defense — the detective's testimony that there were no signs of injury documented in the medical records — was prejudicial because it informed the jury that the examination documented the presence of no physical injuries to the victim, without explanation. Without more context, this evidence would be misleading because, as the nurse later testified, the absence of physical injuries does not discount prior sexual abuse. We thus conclude that the trial court reasonably acted within its discretion by determining that the defense introduced inadmissible hearsay evidence and that the State was then entitled to introduce other evidence to counter the prejudice caused by the defense. See id. at 146.

We next consider whether the State's rebuttal evidence — namely, the substance of the nurse's testimony — was the proper evidence to balance the prejudice created by the defense's questioning of the detective. See Benoit, 126 N.H. at 21 (explaining that the fact that the "door has been opened" does not permit all evidence to "pass through" because the doctrine is intended to prevent prejudice and is not to be subverted into a vehicle for the introduction of prejudice). We conclude that the State was entitled to explain the meaning of the medical records. When a party presents inadmissible, prejudicial evidence, the opposing party has a particularly strong interest in being able to refute such evidence. See State v. Wamala, 158 N.H. 583, 589 (2009) ("The curative admissibility doctrine applies when inadmissible prejudicial evidence has been erroneously admitted, and the opponent seeks to introduce testimony to counter the prejudice." (quotation omitted)); cf. DePaula, 170 N.H. at 149 (discussing the strong interest, under the specific contradiction doctrine, in refuting admissible evidence that creates a misleading advantage). Rebuttal evidence sought to be admitted through the opening the door doctrine is evaluated, not by its relevance to the charged conduct, but by its ability, and whether it is necessary, to counter the prejudice created by the other party's opening of the door. See, e.g., State v. Nightingale, 160 N.H. 569, 579-80 (2010) (discussing the specific contradiction doctrine and whether rebuttal evidence specifically contradicted the admitted evidence).

9

The defendant asserts that the trial court erred by allowing the State to introduce the nurse's testimony because it exceeded the scope of the "open door." In ruling that the defense opened the door, the trial court explicitly stated that the nurse's testimony "is only admissible to the extent necessary to rebut the unfair advantage gained" and that she could "testify about this issue of how likely or unlikely injuries are in these situations based on her experience," but she would not be allowed to discuss statements made by the victim during the examination. At trial, the nurse testified about her role in conducting CAPP examinations, how the examinations are performed, and that her findings in the victim's examination were "normal." She explained that she infrequently observes physical signs of injuries in CAPP examinations and that a "normal" finding does not necessarily prove whether the examinee was abused. This testimony did not exceed the scope of the curative admissibility doctrine because it was limited to rebutting the prejudice caused by the defendant's cross-examination of the detective. The nurse explained her findings after she was qualified as an expert. Consistent with the trial court's order, her testimony did not describe the statements made to her by the victim. We thus are unpersuaded that the nurse's testimony exceeded the scope of the "open door."

The defendant next argues that, even if the trial court correctly applied the opening the door doctrine, the admission of the nurse's testimony was overly prejudicial and was offered to bolster the victim's credibility. The nurse explained that her observation of no signs of a prior injury was not conclusive of whether an injury ever occurred, particularly when an examination is conducted years after the abuse. Her testimony that the results of the victim's examination were "normal" therefore did not establish whether the victim experienced sexual abuse. At oral argument, defense counsel conceded that the nurse's findings neither supported nor rebutted an allegation of penetration, given that the CAPP examination was conducted two years after the defendant had any contact with the victim. Therefore, we are unpersuaded that the nurse's testimony, which narrowly addressed her findings that the victim had no signs of injury, was unfairly prejudicial.

Finally, the defendant asserts that he was prejudiced because he was unable to challenge the nurse's credentials, pursue countering evidence, and prepare for her testimony. He contends that the nurse's testimony "was replete with unsupported postulation, an admitted lack of data to support her speculation, and an admitted lack of preparation for the testimony she would provide." He argues that he did not have enough time to call an expert of his own to rebut the nurse's testimony and that, had he known that the nurse would testify, he would have planned accordingly. However, during trial, the court allowed the defense to depose the nurse before resuming trial proceedings the following day. The defense also cross-examined the nurse

10

regarding her experience, findings, and opinions.  Moreover, the defense did not ask the trial court to suspend the trial for additional time.  Accordingly, we are unpersuaded that the defendant was unfairly prejudiced.  Thus, we conclude that the defendant has failed to carry his burden of establishing either that the trial court's ruling was an unsustainable exercise of its discretion or that it was clearly untenable or unreasonable to the prejudice of his case.  See Gaudet, 166 N.H. at 397.

Affirmed.

BASSETT and HANTZ MARCONI, JJ., concurred.